WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
MICHAEL BURSHTEYN (CA SBN 295320)
MBurshteyn@mofo.com
JUSTIN REZKALLA (CA SBN 347603)
JRezkalla@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

DILLON KRAUS (*pro hac vice forthcoming*)
DKraus@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

*Attorneys for Plaintiff P. Bart Stephens*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P. BART STEPHENS,<br><br>        Plaintiff,<br><br>    v.<br><br>JANE DOE, ET AL.,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>FILED UNDER SEAL REDACTED VERSION |

COMPLAINT

sf-5581822

Plaintiff P. Bart Stephens ("Plaintiff"), by and through his undersigned counsel, as and for his Complaint against Defendants Jane Doe, et al. ("Defendants"), alleges as follows:

## INTRODUCTION

1. Plaintiff is a victim of attackers who stole over $6.3 million of his digital assets. The attackers did so by hacking into his online accounts and impersonating him. Plaintiff consequently brings this action for conversion, unjust enrichment, violations of the Computer Fraud and Abuse Act, violations of the Stored Communications Act, and replevin to recover his assets and for damages.

2. Plaintiff is the co-founder of a venture capital firm that invests in digital asset ventures. He owns digital assets personally as well.

3. Defendants are as-of-yet unidentified malicious hackers. They impersonated Plaintiff to gain unauthorized access to Plaintiff's accounts and steal his digital assets. They did so through what is known as a SIM-swap attack, where an attacker takes control of a victim's cell phone line by impersonating the victim and tricking the cellular service provider into transferring the victim's service to a SIM card controlled by the attacker.

4. Defendants used their unauthorized access to Plaintiff's cellular account along with their unauthorized access to his private ███████████ and ███████ hosted email accounts to gain unauthorized access to Plaintiff's personal ██████ account.

5. Then Defendants converted over $6.3 million worth of digital assets by withdrawing them to blockchain wallets controlled by Defendants.

6. After the initial attack, Defendants funneled portions of the stolen digital assets through an offshore exchange and through other wallets Defendants controlled in an effort to dissipate them.

7. Plaintiff brings this action to stop Defendants from further laundering his digital assets and to recover for the harm they have caused him.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and, on information and belief, it is an action between citizens of different states.

9. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a), *et seq.*).

10. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Stored Communications Act (18 U.S.C. § 2701, *et seq.*).

11. This Court also has personal jurisdiction over Defendants because they committed an intentional tort against Plaintiff, who resides in this jurisdiction and maintains the accounts they hacked in this jurisdiction.

12. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims, based on Defendants' conduct, occurred in the Northern District of California.

**THE PARTIES**

13. Plaintiff P. Bart Stephens is a natural person and resides in Marin County, California.

14. Defendants Jane Doe, et al. are individuals of unknown residence, who on information and belief have targeted Plaintiff's personal accounts and stolen Plaintiff's digital assets held in an account at ▮▮▮▮▮▮ based in the Northern District of California.

**FACTUAL BACKGROUND**

**A. Plaintiff Co-Founded a Venture Capital Firm in the Blockchain Industry and Also Owns Digital Assets in His Individual Capacity.**

15. Plaintiff is a venture capital investor in the crypto space. He co-founded a leading venture firm in the blockchain industry in 2013.

16.   To date, the venture firm established by Plaintiff has invested in more than 160 portfolio companies.  It now manages $2 billion in assets, employs 14 dedicated investment professionals, and has launched seven funds.  Plaintiff remains its co-founder and co-managing partner.

17.   Like many Americans, Plaintiff also privately holds his own digital assets.[1]  He stores the keys for a portion of these assets via a software wallet hosted by ███████, a privately held company headquartered in San Francisco and incorporated under the laws of the state of Delaware.

**B.   Defendants Stole Over $6.3 Million in Plaintiff's Assets via a SIM-Swap Attack.**

18.   "SIM-swapping" is a common cyberattack method that entails transferring the service of the victim's mobile device service to another mobile device controlled by the attacker.[2]

19.   To activate a mobile device for use on cellular telephone networks, devices are assigned a unique International Mobile Equipment Identity ("IMEI") number in combination with a unique Subscriber Identity Module ("SIM").  These numbers are enclosed in a small removable chip or embedded directly in the mobile device.  The SIM card containing these numbers, when paired with a customer's mobile telephone number, allows a given user on a mobile phone carrier's network to make and receive cellular calls and text messages associated with the customer's mobile telephone number.

20.   Attackers carry out "SIM-swapping" by stealing the identity of the victim and using personal information to convince the victim's telecommunications company to transfer access to the victim's cellular service to a SIM card controlled by the attacker.

21.   Defendants conducted a SIM-swap attack against Plaintiff on May 12, 2023.  First, they compiled stolen data and leveraged that data to obtain access to several of Plaintiff's private online user accounts.  Using information stolen from these private online accounts, Defendants

---

[1] Thomas Franck, *One in 5 adults has invested in, traded or used cryptocurrency, NBC News poll shows*, NBC News, https://www.nbcnews.com/tech/tech-news/one-five-adults-invested-traded-used-cryptocurrency-nbc-news-poll-show-rcna22380.
[2] *See* https://www.ic3.gov/Media/Y2022/PSA220208.

1  impersonated Plaintiff and convinced ▓▓▓▓▓▓▓ ("▓▓▓▓") to give Defendants access to
2  Plaintiff's cellular line via a SIM card that Defendants controlled.

3      22.    With this control of Plaintiff's cellular service established, Defendants bypassed
4  two-factor authentication ("2FA") protocols and gained access to Plaintiff's ▓▓▓▓ account.
5  Defendants then stole over $6.3 million worth of digital assets from that account.

    **C. To Execute the SIM-Swap Attack, Defendants Hacked Plaintiff's and His Family's Private Online Email and Cellular Phone Accounts.**

8      23.    To pull off the SIM-swap, Defendants needed enough of Plaintiff's personal
9  information to impersonate him to ▓▓▓▓. On information and belief, Defendants procured this
10 information by harvesting Plaintiff's personal data from the Internet.

11     24.    Prior to founding his venture capital firm, Plaintiff acted as a founder and
12 managing partner of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. His email address
13 while at ▓▓▓▓ was hosted by ▓▓▓▓ ("Plaintiff's ▓▓▓▓ Account"). ▓▓▓▓ is
14 a ▓▓▓▓▓▓▓ enterprise email service.

15     25.    Plaintiff's investigation shows that, on May 12, 2023, one of the Defendants called
16 ▓▓▓▓ customer service claiming to be Plaintiff and provided two phone numbers belonging
17 to Plaintiff in an attempt to gain access to his account. When the phone numbers did not result in
18 access, this Defendant provided Plaintiff's ▓▓▓▓ Account email address. The customer
19 service representative sought identity confirmation by asking to speak with a contact listed on the
20 account, but this Defendant was unable to provide the necessary information, and the call was
21 terminated.

22     26.    Around 11:30 PT on May 12, 2023, either the same or another Defendant again
23 called ▓▓▓▓. This time the Defendant caller falsely claimed to be Plaintiff's brother. The
24 ▓▓▓▓ customer service representative asked Defendant to confirm Plaintiff's personal
25 information to verify his identity. Using Plaintiff's personal information that Defendants
26 gathered, this Defendant was able to pass the verification check. The customer service
27 representative then walked Defendant through the process to reset the password to Plaintiff's
28

1 family member's ▓▓▓ account (the "Second ▓▓▓ Account") and to change the
2 account phone number to a new number that Defendants controlled: ▓▓▓.

3     27.    The Second ▓▓▓ Account (belonging to Plaintiff's brother) was the
4 administrator of the various ▓▓▓ accounts, and with control over the Second ▓▓▓
5 Account, Defendants had the ability to change permissions and controls for the other account.

6     28.    On May 12, 2023, between 11:42 and 12:06 PT, Defendants logged into the
7 Second ▓▓▓ Account and successfully changed its password using the following IP
8 address: ▓▓▓ (the "232 Address"). With the Second ▓▓▓ Account's
9 administrator capabilities, Defendants were able to change the password for Plaintiff's ▓▓▓
10 Account using the 232 Address.

11     29.    At some point on or before May 12, 2023, Defendants also gained access to
12 Plaintiff's ▓▓▓ Account ("Plaintiff's ▓▓▓ Account"). With this access,
13 Defendants placed an order for in-store pickup of a Nokia 2720 device through Plaintiff's
14 ▓▓▓ Account at approximately 13:39 CT on the same day. ▓▓▓ fraud department has
15 informed Plaintiff that ▓▓▓ flagged this order as fraudulent and canceled it.

16     30.    Despite the initial Nokia 2720 order being flagged as fraudulent, however,
17 Defendants still found a way to purchase a new device through Plaintiff's ▓▓▓ Account. On
18 information and belief, at some point during the day of May 12, 2023, Defendants visited ▓▓▓
19 ▓▓▓, and successfully SIM-swapped Plaintiff's private cell
20 phone account using the personal information obtained through Plaintiff's ▓▓▓ Account.

21     **D.    Defendants Leveraged the SIM-Swapped Device to Gain Unauthorized Access to More of Plaintiff's Accounts.**
22

23     31.    At this stage of their attack, Defendants unlawfully controlled Plaintiff's cellular
24 service via the swapped SIM-card (the "SIM-Swapped Device") and Plaintiff's ▓▓▓
25 Account. Defendants were able to leverage these accounts to access additional online accounts
26 belonging to Plaintiff, including his ▓▓▓ and ▓▓▓ accounts.

27     32.    On or about 12:56 to 16:15 PT on May 12, 2023, Defendants logged into
28 Plaintiff's ▓▓▓ account ("Plaintiff's ▓▓▓ Account") without authorization. Defendants

1  used credentials obtained through Plaintiff's ▌ Account and passed 2FA through the
2  SIM-Swapped Device, from two IP addresses: ▌ (the "230 Address") and the
3  232 Address. Defendants viewed dozens of files in the account and downloaded at least eight.

4      33.   At approximately 14:52 PT on May 12, 2023, Defendants requested a password
5  reset from Plaintiff's ▌ account ("Plaintiff's ▌ Account") from the 232 Address,
6  and the password was successfully reset with a 48-hour send delay applied. On information and
7  belief, Defendants did this with data obtained via Plaintiff's ▌ Account or through the
8  SIM-Swapped Device.

9      34.   On information and belief, at some time on May 12 or May 13, 2023, Defendants
10 also gained unauthorized access to Plaintiff's private ▌ account ("Plaintiff's ▌
11 Account"). Plaintiff's investigation is ongoing but, on information and belief, Defendants did so
12 in one of two ways: either by taking advantage of stolen information available on the Dark Web
13 or by utilizing access to Plaintiff's ▌ Account, which was a back-up address for
14 Plaintiff's ▌ Account.

15     35.   On information and belief, on May 13, 2023, Defendants used the information
16 unlawfully obtained from Plaintiff's ▌ Account combined with the SIM-Swapped
17 Device to gain unlawful access to Plaintiff's ▌ account ("Plaintiff's ▌ Account"). They
18 achieved this by requesting a 2FA verification code, which was delivered to the SIM-Swapped
19 Device. With access to Plaintiff's ▌ Account, Defendants downloaded multiple files.
20 Defendants did not change the ▌ password, as it would have logged out each device logged
21 into Plaintiff's ▌ Account and thus notified Plaintiff of the hack.

22     36.   On May 13, 2023, between 15:56 PT and 16:03 PT, Defendants messaged Plaintiff
23 from his own ▌ Account to his business email address (the "BC Account"). Among other
24 things, Defendants' messages bragged that they had accessed Plaintiff's ▌ Account and
25 downloaded Plaintiff's keychains and credentials that Plaintiff used from ▌ and ▌
26 ▌. Defendants characterized themselves as a "hacker" and claimed that they could
27 "remotely hack anyone's phone number in the mainland U.S." Defendants further wrote, "You
28 have something to say? Then whatsapp me ▌ before 6PM California time."

### E. Armed with the SIM-Swapped Device and Access to Plaintiff's Accounts, Defendants Stole over $6.3 Million of Digital Assets from Plaintiff.

37. On May 14, 2023, at approximately 5:51 PT, Defendants used the previously reset ▇▇▇ password to log into Plaintiff's ▇▇▇ Account from the 232 Address and began to systematically steal Plaintiff's digital assets. In order to log into Plaintiff's ▇▇▇ Account, Defendants needed both Plaintiff's password and the ability to pass Plaintiff's ▇▇▇ Account's 2FA protocol. Defendants were able to pass the 2FA using the SIM-Swapped Device most likely in concert with Plaintiff's ▇▇▇ keys found in Plaintiff's ▇▇▇ Account backups. A day prior to this successful password reset, Defendants unsuccessfully attempted to log into Plaintiff's ▇▇▇ Account from IP address ▇▇▇ on May 13, 2023, at approximately 18:06 PT.

38. Using their unauthorized access to Plaintiff's ▇▇▇ Account, Defendants made a series of withdrawals and transfers to individual wallets whose private keys they controlled ("Defendants' Wallets"). On information and belief, these private wallets were not associated with any third-party entity, such as a centralized exchange. Between 16:09 and 16:47 PT on May 14, 2023, Defendants conducted 17 transfers of tokens, including Bitcoin ("BTC"), as well as Ethereum protocol tokens Ether ("ETH"), Maker ("MKR"), Compound ("COMP"), Uniswap ("UNI"), Wrapped Bitcoin ("WBTC"), Yearn.Finance ("YFI"), and Filecoin ("FIL") from Plaintiff's ▇▇▇ Account to Defendants' Wallets. These transfers comprised over $6.3 million in value, approximated by the daily average market price of each token at the time of the transactions.

39. Between May 14 and May 15, 2023, Defendants converted the COMP, MKR, UNI, WBTC, and YFI tokens to ETH via decentralized digital asset exchanges ▇▇▇ and ▇▇▇. The below tokens are now either stored in Defendants' Wallets or have been moved through an exchange.

| ▇▇▇ Withdrawal Transactions | | | | |
|---|---|---|---|---|
| Time (PT) | Receiving Address | Amount | Currency | USD Value |

| Timestamp | Address | Amount | Token | Value |
|---|---|---|---|---|
| 2023-05-14T16:09:27.092Z | 0x36f6Cc834A431c0a58524b3c54099D55ADAA379d | 45.0440431 | ETH | $81,079.28 |
| 2023-05-14T16:03:37.488Z | 0xABc0948e1551c52C7D0Cfc7b9FB2f95a8B2CCF10 | 118299.446 | UNI | $624,621.07 |
| 2023-05-14T16:07:06.597Z | 0xABc0948e1551c52C7D0Cfc7b9FB2f95a8B2CCF10 | 509.846409 | MKR | $3,186.54 |
| 2023-05-14T16:13:30.572Z | 0xABc0948e1551c52C7D0Cfc7b9FB2f95a8B2CCF10 | 24.9571141 | YFI | $166,651.13 |
| 2023-05-14T16:22:28.406Z | 0xABc0948e1551c52C7D0Cfc7b9FB2f95a8B2CCF10 | 1865.93943 | COMP | $65,643.75 |
| 2023-05-14T16:49:47.326Z | 0xd3CC924Ac27ae6bf41D2735e928a17F310847aAB | 1.04003503 | WBTC | $28,080.95 |
| 2023-05-14T16:58:56.793Z | 0xd3CC924Ac27ae6bf41D2735e928a17F310847aAB | 46.302949 | MKR | $289.39 |
| 2023-05-14T19:19:07.105Z | 0xd3CC924Ac27ae6bf41D2735e928a17F310847aAB | 119.931468 | COMP | $4,219.19 |
| 2023-05-14T19:21:39.014Z | 0xd3CC924Ac27ae6bf41D2735e928a17F310847aAB | 792.347087 | UNI | $4,183.59 |
| 2023-05-14T15:37:17.304Z | bc1qhc0m40ye3rcz929clqfha5vcpazuu6eq73mcuk | 86 | BTC | $2,322,000.00 |
| 2023-05-14T15:53:09.921Z | bc1qhc0m40ye3rcz929clqfha5vcpazuu6eq73mcuk | 27 | BTC | $729,000.00 |
| 2023-05-14T17:05:47.178Z | bc1qsvn8g8xp9nkjsjmqzclm4zmldhwzqwc6enf9uq | 4.82582216 | BTC | $130,297.20 |
| 2023-05-14T19:16:37.573Z | bc1qtrmrmwjlx0qjdshqf2f3er0khdkcft04lc3yy4 | 0.16924134 | BTC | $4,569.52 |
| 2023-05-14T19:50:42.852Z | bc1qvvjklu6xrxq3grhygw447v8tf95zmuqxs5s3uj | 66.123511 | BTC | $1,785,334.80 |
| 2023-05-14T20:00:06.753Z | bc1qvvjklu6xrxq3grhygw447v8tf95zmuqxs5s3uj | 5.22547463 | BTC | $141,087.82 |

| | | | | |
|---|---|---|---|---|
| 2023-05-14T20:27:39.563Z | bc1qvvjklu6xrxq3grhygw447v8tf95zmuqxs5s3uj | 6.76719258 | BTC | $182,714.20 |
| 2023-05-14T16:47:54.975Z | f1xofdvcy5fdmekkkugqvmlodpbrjb6ruejsrco4i | 8090.79672 | FIL | $36,084.95 |
| | | | | $6,309,043.37 |

40. Also on May 14, Defendants attempted another attack—to drain 80 BTC and 6,500 ETH (valued at nearly $14 million) from Plaintiff's ▇▇▇▇▇▇▇ account. ▇▇▇▇▇▇ is a custodial cold wallet hosted by ▇▇▇▇▇ that includes additional security measures such as multiple required approvals and a 48-hour waiting period for withdrawals. Defendants' withdrawal attempts triggered an email alert to the BC Account and were subsequently canceled by an employee of Plaintiff's venture fund who received notification of these attempts. This notification was the first time that Plaintiff learned that Plaintiff's ▇▇▇▇▇ Account was under attack.

41. Later that day, Defendants changed the PIN number to Plaintiff's ▇▇▇▇ Account. Plaintiff, as a result, had difficulty authenticating himself for purposes of communicating with ▇▇▇▇▇ fraud or customer service departments. After a day had passed, on May 15, 2023, ▇▇▇▇▇ fraud department confirmed on a phone call with Plaintiff's IT support team that Plaintiff's line had been SIM-swapped. ▇▇▇▇▇ fraud department then disabled Defendants' SIM and reactivated Plaintiff's SIM on May 15, 2023, but Defendants had already stolen more than $6.3 million in Plaintiff's digital assets.

42. Over the following weeks, Defendants moved the stolen funds through a series of individual wallets in an effort to conceal the stolen funds and make tracing subsequent transactions more difficult.

43. Starting on May 15, 2023, and continuing through the time of this writing, Defendants then migrated the converted assets into the digital asset exchanges ▇▇▇▇▇ and ▇▇▇▇▇▇▇ in an effort to convert and further launder the stolen tokens.

44. ▮▮▮▮▮ is an online digital asset exchange where users can send digital assets of one type and swap them for assets of another type. Because the exchange is proprietary and centrally controlled by its operators, movements are not transparent on the corresponding blockchain.

45. Defendants' transactions through ▮▮▮▮ and ▮▮▮▮ are detailed below:

| Bitcoin Transactions Through ▮▮▮▮ | | |
|---|---|---|
| **Hash** | **Date** | **Value (BTC)** |
| bd37e1fe768ebe124f0dc9177dd9d989a8bdf3c6044545c6944f914d90866ca5 | 6/27/23 4:22 PM | 0.036 |
| 92529d746b695f405efbbb9f70c9710707aeba8a61d273e03a6e099834116f13 | 5/15/2023 12:35 | 0.5312587 |
| ab37c220dbe8edce32694388859a9783a259c856a6b539b98ad91ee25b31cffb | 5/24/2023 21:07 | 9.68174891 |
| 5355c0a65982d74f07f65be8db0d8c5c0f471e6774aa07cb2d27fed698bb06c0 | 5/29/2023 17:01 | 1.63139784 |
| c38a15addc2ffd62a7ab464e5488c14c00a3af20d552219880b3988ddecdba8f | 6/1/2023 12:41 | 2.60517013 |
| 45f3077c9dcf91be91f7384eaaa7034b6187465d53b62e75e0d2a35815689a04 | 6/1/2023 19:59 | 1.30260572 |
| 398402106cc73e43719bd7f239bc886a306ea0bfcdd20576019fd9bb8efff5f4 | 6/4/2023 4:09 | 0.73572522 |
| aa3305ad141f9c732964f910e5ef6a0ec4e290643abf1eae616b0b079a549ff8 | 6/6/2023 7:46 | 15.5125975 |
| f3f9b82229131df82627bd9c1b2b3fedef84a85cc05d7165803ccd4b572b49e6 | 6/13/2023 3:35 | 2.05232752 |
| 387b76b981681b405803cc4be6fcf25ead11be980585adcff029f8ce2ac63f15 | 6/26/2023 9:38 | 8 |
| 649a4ad3f654041ef2241eb3f992ad725ad33229aae047d042a6b15dfbfeb131 | 6/26/2023 16:46 | 1 |
| ed7e8158c183e288d87c472d82cd3094745ab4bd7f6f7a89243360880723b8a5 | 5/15/2023 18:58 | 1.4 |
| 4b6d3c0c9443ba7baaafc983db3e3ba08a32cfb3b8df2198a25bdf489429dfe0 | 6/27/2023 21:23 | 1 |
| 8fef068eb3e66bf9cf572432a0b7e512314ee51e7812d85e2d0f8715850909ad | 6/28/2023 18:16 | 4.3 |
| 0a675c731f0d78dfcfb4701aed2640b8c936f0e4ee686d9a3a3f3bd15437bda0 | 6/28/2023 23:27 | 0.8 |
| d8128995a9a8a3d13473628139ec22d59b923e9d522ab90c05061db9edf7d5f4 | 6/30/2023 9:21 | 2.5 |

| Hash | Date | Value |
|---|---|---|
| 68858ffce807399098263b4189b5803ab75d8410b3de85aec10e75c3de904ca6 | 7/2/2023 12:32 | 1 |
| 4ebbce8c138f93fc30488ac4e72e81aeaf6c1f3ba2cffddbc3793dcb3a99e6f9 | 7/3/2023 10:08 | 0.18710745 |
| 30aca9cf5d608dd0c77ad1562a928a78a3318ae26021d6bf6219db5bc0a16607 | 7/4/2023 19:55 | 10 |
| 9ed318b468fefccb7774a0ba67f28d08b43b4437bf7a53130d2d7a254cb5fa72 | 7/5/2023 0:33 | 7.11621882 |
| 9561be4bee8c8b0323eccda40ea8bed03f5cc13e1b8aea84abc1894c6b79b205 | 7/28/2023 20:39 | 2.21706669 |
| 0eb9e5fa4e47ab2e923d442ea3cb1f0de8892fa92b4e79d43e3d1b1678a4770a | 7/28/2023 21:33 | 2.2 |
| 78a741a34eeef46b657b973b71ace10fcdd3cc674ba8c6744cb68691211cb22b | 8/1/2023 20:35 | 1.4699 |
| 50986ababfae161606830cd43c6b66d01ab4d2c17b1da72fd1a7fcdd53e98dbd | 8/4/2023 21:17 | 1.4497776 |

| Ethereum Transactions Through ▇▇▇ | | |
|---|---|---|
| Hash | Date | Value (ETH) |
| 0x08021f1e1809fd94286bd0876a7067b4eae4f8faa2c1e8dbe2bd22ca20b8bc0d | 6/3/2023 0:16 | 0.03710316 |
| 0xe556e2fd23a29b65cc3bb3bf01f6adf4760165ef86e7ce0e4f1622d97aad2726 | 6/14/2023 0:01 | -29 |
| 0x017309e89fc7b5f0768eec2ab7847b013753a2d9312d73d5a4820d7d6d7c7615 | 6/20/2023 0:35 | -86.0926477 |
| 0x2fff960a5d19261bed41722a5e9b355aab90c6171ae831af5f5c0eee5f2b4739 | 6/21/2023 2:06 | -2.76548158 |
| 0xa2f3ac1ed6d6691fba1b630434b0bfb2687b2dd3d33e2d10837b355dc1158d17 | 6/22/2023 14:43 | -21.10592652 |
| 0x49ead9f4b882055643b0bc4ee53e7a07cb30d31a104872c9e98e8464677b39cf | 6/22/2023 15:20 | -61.799582 |
| 0x15e24ab023b293a2e1631a292f2b7455a485b3442d72e0327f182b09a2113437 | 6/22/2023 18:46 | -202.0982122 |
| 0xb7a4827a2863ffda6e14674e4bd6c0fd19f159f1004571dc5b812b18e060f1fc | 6/22/2023 20:57 | -0.05247446 |
| 0xdd427237a535dbbac6be08182aa82e35046b37c7b10c4ebc3662b450c6f3e14c | 6/23/2023 12:55 | -99.99967 |
| 0x83bb56f9cc558e739db62b7a5a91e84ce32bab1212e86dd972a2706b7923d8a6 | 6/26/2023 0:35 | 80.99973599 |
| 0x8987d73b9d515d015480cca19bedc7daf439dddb536ac687324eb1a6feba80e1 | 6/28/2023 18:23 | 0.02228694 |

| Deposits of Converted Assets | | | |
|---|---|---|---|
| Hash | Date | Value | Asset |
| 6952a545e61e803881baee51005af268fb92d265199c9078a7dea6bdf575235e | 5/15/2023 12:44 | 5.498822 | BTC |
| bafy2bzacebk4xwn6xuaw4agh5rfioayxjyiwirq4ddbr3jfmzk4wvju46blio | 5/15/2023 1:33 | 2000 | FIL |
| bafy2bzaceafblcmunttbudaljkfjbpc5b7erzmphtonjbsythmsv7xaq66bfg | 5/15/2023 2:19 | 3079.999 | FIL |

46. In sum, Defendants stole 196.1112417 BTC, 1985.870896 COMP, 45.04404306 ETH, 8090.796719 FIL, 556.1493578 MKR, 119091.7926 UNI, 1.04003503 WBTC, and 24.95711414 YFI belonging to Plaintiff, valued at approximately $6.3 million.

47. As of this writing, Defendants have moved approximately $262,473.58 worth of digital assets into ▮▮▮▮ and $3,358,481.28 worth of digital assets into ▮▮▮▮. Approximately $2.5 million worth of digital assets remain in Defendants' Wallets in the form of BTC, ETH, and FIL, while a small portion of the assets have been spent by Defendants on exchange and transaction fees.

48. To investigate the SIM-swap attack, the hacks into his personal accounts, and the resulting loss of his digital assets, as well as to restore access to his various accounts and to identify Defendants, Plaintiff has expended well over $5,000.

**FIRST CAUSE OF ACTION**

**(CONVERSION)**

49. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

50. Defendants purport to exercise the right of ownership over digital assets unlawfully taken from the ▮▮▮▮ Account to the exclusion of Plaintiff's rights as rightful owner.

51. Defendants attacked Plaintiff and took over $6.3 million in digital assets from Plaintiff without authorization. Defendants exercised and continue to exercise dominion over the assets, despite their belonging to Plaintiff.

sf-5581822

52. Defendants' conversion directly and proximately caused Plaintiff harm, including loss of his digital assets, as well as costs of investigation and remediation of Defendants' attack.

53. As a result of Defendants' conversion, Plaintiff has suffered damages in an amount to be proven at trial, but in no event less than $6.3 million, plus interest from and after the time of conversion.

## SECOND CAUSE OF ACTION

### (UNJUST ENRICHMENT)

54. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

55. Defendants unlawfully obtained access to Plaintiff's online accounts, including his ▮▮▮▮ Account. Defendants used this access to steal and receive the benefit of $6.3 million in digital assets from Plaintiff.

56. Defendants unjustly retain control over Plaintiff's assets, depriving Plaintiff of his right to withdraw, convert, transfer, or invest over $6.3 million worth of digital assets.

57. As a result of Defendants' unjust enrichment, Plaintiff has suffered damages in an amount to be proven at trial, but in no event less than $6.3 million, plus interest from and after the time of unjust enrichment and the costs of investigation and remediation of Defendants' attack.

## THIRD CAUSE OF ACTION

### (VIOLATION OF 18 U.S.C. §§ 1030(A)(2)(C), 1030(A)(4), AND 1030(5)(C)

### (COMPUTER FRAUD AND ABUSE ACT))

58. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

59. Defendants violated 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C) (the "Computer Fraud and Abuse Act," or "CFAA") by accessing a protected computer without authorization, by doing so knowingly and with an intent to defraud, by furthering fraudulent activity thereby to obtain something of value, and by intentionally accessing a protected computer without authorization and causing Plaintiff damage or loss.

60. Plaintiff's cell phone is a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) because it is used in interstate or foreign commerce or communications, including sending and receiving electronic mail, sending and receiving text messages, and accessing and interacting with the internet.

61. Plaintiff's ▮▮▮▮ Account is also hosted on a "protected computer" as defined under 18 U.S.C. § 1030(e)(2)(b) because it is used in interstate or foreign commerce or communications for sending and receiving electronic mail.

62. Plaintiff's ▮▮ Account is also hosted on a "protected computer" as defined under 18 U.S.C. § 1030(e)(2)(b) because it is used in interstate or foreign commerce or communications for sending and receiving electronic mail.

63. Plaintiff's ▮▮▮ Account is also hosted on a "protected computer" as defined under 18 U.S.C. § 1030(e)(2)(b) because it is used in interstate or foreign commerce.

64. Plaintiff's ▮▮ Account is also hosted on a "protected computer" as defined under 18 U.S.C. § 1030(e)(2)(b) because it is used in interstate or foreign commerce.

65. Plaintiff's ▮▮▮▮ Account is also hosted on a "protected computer" as defined under 18 U.S.C. § 1030(e)(2)(b) because it is used in interstate or foreign commerce.

66. Defendants, without authorization, knowingly and with an intent to defraud, accessed Plaintiff's cell phone, ▮▮▮▮ Account, ▮▮▮ Account, ▮▮▮▮ Account, ▮▮▮ Account, and ▮▮▮▮ Account (together, "Plaintiff's Protected Device and Accounts").

67. As a result of this unauthorized access, Defendants obtained from Plaintiff's Protected Devices and Accounts valuable information, including passcodes, access to other protected computers, and Plaintiff's digital assets.

68. Defendants intentionally furthered a fraud by obtaining unauthorized access to Plaintiff's Protected Devices and Accounts, so they could falsely assume Plaintiff's identity and access Plaintiff's various accounts in order to steal Plaintiff's digital assets.

69. Defendants intentionally accessed Plaintiff's Protected Devices and Accounts without authorization and, as a result, caused Plaintiff damage or loss.

1    70.    As a result of Defendants' unauthorized access to Plaintiff's Protected Devices and
2  Accounts and the information obtained therein, Plaintiff has suffered losses and damages far in
3  excess of $5,000, plus interest from and after the time of unjust enrichment.  Plaintiff has
4  additionally incurred over $5,000 in loss in the form of investigation and remediation costs
5  following Defendants' attack to restore access to Plaintiff's Protected Devices and Accounts.

6    71.    Plaintiff is empowered to bring this claim under 18 U.S.C. § 1030(g) and is
7  entitled to compensatory damages, injunctive relief, and equitable relief.

## FOURTH CAUSE OF ACTION

**(VIOLATION OF 18 U.S.C. §§ 2701-2712 (STORED COMMUNICATIONS ACT))**

72.    Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

73.    Defendants violated 18 U.S.C. § 2701(a) in intentionally obtaining unauthorized access to Plaintiff's Protected Devices and Accounts.

74.    In so doing, Defendants obtained electronic communications while they were in storage in Plaintiff's Protected Devices and Accounts, including accessing, altering, preventing access to, and downloading emails and files from the ▮▮▮▮ Account; accessing, altering, preventing access to, and downloading files from the ▮▮ Account; accessing and downloading files from the ▮▮▮ Account; accessing and downloading files from the ▮▮ Account; and accessing, altering, preventing access to, and making digital asset transfers via various blockchains through the ▮▮▮ Account.

75.    Defendants did all of the above intentionally, and Plaintiff was harmed as a result.

76.    Plaintiff is empowered to bring this claim under 18 U.S.C. § 2707(a).

77.    Plaintiff is entitled to recover the amount of damages Plaintiff has suffered under 18 U.S.C. §2707(c), which in this case is no less than $6.3 million worth of converted digital assets, plus interest from and after the time of unjust enrichment and the costs of investigation and remediation of Defendants' attack.

78.    Plaintiff is entitled to recover reasonable attorneys' fees and other litigation costs reasonable incurred under 18 U.S.C. § 2707(b)(3).

## FIFTH CAUSE OF ACTION

### (REPLEVIN)

79. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

80. This is an action to recover personal property. The property at issue is 196.1112417 BTC, 1985.870896 COMP, 45.04404306 ETH, 8090.796719 FIL, 556.1493578 MKR, 119091.7926 UNI, 1.04003503 WBTC, and 24.95711414 YFI.

81. Upon information and belief, the U.S. Dollar equivalent of the personal property as of the date of theft is approximately $6.309 million.

82. As of the date of this filing, the personal property is believed to be stored in wallets controlled by Defendants or has been laundered through the decentralized digital asset exchange ████████.

83. On May 14, 2023, at the time of the conversion, Plaintiff owned and had the right to immediately possess the personal property that was taken from him.

84. Defendants have intentionally exercised control, and continue to exercise control, over the digital assets in such a way as to exclude Plaintiff from using or possessing them.

85. The property has not been taken for any tax, assessment, or fine pursuant to law, nor has it been taken under an execution or attachment against Plaintiff's property.

86. Plaintiff therefore demands replevin of the property taken from him that is currently held by Defendants and thereby demands that the wrongfully obtained property be restored to Plaintiff.

## PRAYER FOR RELIEF

NOW, THEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff as follows:

87. For compensatory, incidental, and consequential damages, in an amount to be determined, for harms Plaintiff suffered by Defendants' unlawful conduct, including the $6.3 million in converted assets that Defendants retain and enforcement costs to stop Defendants' unlawful conduct;

1    88.    For punitive, exemplary, and any other damages authorized by law;

2    89.    For prejudgment and post-judgment interest on the full amount of damages;

3    90.    For injunctive relief, including an order enjoining Defendants from moving and dispersing Plaintiff's digital assets;

5    91.    For Plaintiff's costs incurred in order to facilitate investigation and remediation of Defendants' attack;

7    92.    For Plaintiff's attorneys' fees according to proof, and costs incurred, to the extent permitted by law; and

9    93.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues triable in this action.

Dated: August 16, 2023

WILLIAM FRENTZEN
MICHAEL BURSHTEYN
DILLON KRAUS
JUSTIN REZKALLA
MORRISON & FOERSTER LLP

By: */s/ William Frentzen*
William Frentzen

*Attorneys for Plaintiff*
*P. BART STEPHENS*

sf-5581822